Citation Nr: 1755095 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 11-27 799 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin


THE ISSUES

1. Entitlement to service connection for idiopathic cold agglutinin autoimmune hemolytic anemia (claimed as a blood disorder). 

2. Entitlement to service connection for hives/skin disorder. 

3. Entitlement to service connection for a left knee disorder. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

E. Miller, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1998 to June 2004 in the United States Air Force. The Veteran has reported that he subsequently served in the Wisconsin Army National Guard from December 2004 to December 2009, but did not serve on active duty during such service. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from January 2009 and August 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin. 

The case was remanded in December 2016 to schedule the Veteran for a hearing before the Board. The Veteran subsequently testified at a hearing before the undersigned Veterans Law Judge in June 2017. A transcript of that hearing is associated with the claims file. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

As noted above, the Veteran has reported serving in the Wisconsin Army National Guard from December 2004 to December 2009. See June 2017 hearing transcript. Therefore, the AOJ should secure the service personnel and treatment records from that period of service.

The Board also notes that the Veteran was afforded VA examinations in November 2008 and March 2010 in connection with his claim for service connection for a left knee disorder. The November 2008 VA examiner did not render an opinion on the etiology of the disorder because he found no diagnosis. The March 2010 VA examiner diagnosed him with a left knee strain, but found that the disorder was not related to the Veteran's knee pain in service. In this regard, he indicated that the Veteran had a self-limited injury in service that had resolved without evidence of residuals. It was also noted that he had a significant intervening event of a tractor accident that was more likely the cause of his symptoms. In June 2010, the VA examiner provided the same opinion for the current diagnosis of a left meniscal tear. Notably, the VA examiner relied on the fact that the Veteran sustained a post-service injury; however, the Veteran had sought treatment for his left knee prior to that event. For example, VA treatment records show that he complained of cramps in his knees in April 2008, and in September 2008, he reported having left knee pain from an injury in Iraq. VA treatment records dated in August 2009 also document the Veteran's report of left knee pain and an injury in service. He later sought treatment in January 2010 at which time he reported climbing down a tractor on his farm. Notably, however, he indicated that he barely noticed his left knee after that accident because his right knee was so bad at that time. Therefore, the Board finds that an additional medical opinion is needed to determine the nature and etiology of any current left knee disorder.

In addition, the Board notes that VA medical opinions were obtained to determine whether the Veteran had a current blood disorder that was secondary to his service-connected irritable bowel syndrome. However, during the June 2017 hearing, the Veteran clarified that he was not seeking service connection on a secondary basis. Rather, he believes that he developed his current anemia as a result of environmental exposures in service. The Board notes that the VA examiners did not address that theory of entitlement. Therefore, an additional medical opinion is needed.

The Board further notes that the Veteran was afforded VA examinations in November 2008 and April 2010 in connection with his claim for service connection for a skin disorder. The November 2008 VA examiner did not render an opinion on the etiology of the disorder because he found no diagnosis. The April 2010 VA examiner diagnosed the Veteran as having dermatitis and possible rosacea. He opined that the Veteran's dermatitis was less likely than not caused by or the result of his military service. In so doing, he noted that the Veteran was treated for dermatitis in service, but explained that it is generally a self-limited condition and observed that he did not have ongoing care for dermatitis. The March 2010 VA examiner also opined that the Veteran's possible rosacea was not caused by or the result of his military service. In particular, he noted that the Veteran was not treated for any facial rash or ocular rosacea in service. Nevertheless, during the June 2017 hearing, the Veteran asserted that his current skin disorders are related to his exposure to cleaning solvents in service. As the VA examiners did not address that theory of entitlement, the Board finds that an additional medical opinion is needed.

Accordingly, the case is REMANDED for the following action:

1. The AOJ should secure the Veteran's service personnel and treatment records from his reported service in the Wisconsin Army National Guard from December 2004 to December 2009.

The AOJ should also secure the complete service personnel records from the Veteran's period of active duty from June 1998 to June 2004.

2. The AOJ should request the Veteran provide the names and addresses of any and all healthcare providers who have provided treatment for his left knee, a blood disorder, and a skin disorder. After acquiring this information and obtaining any necessary authorization, the AOJ should obtain and associate the records with the claims file.

The AOJ should also secure any outstanding VA medical records.

3. After completing the foregoing development, the Veteran should be afforded a VA examination to determine the nature and etiology of any left knee disorder that may be present. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions.

The examiner should note that the Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the appellant, the examiner should provide a fully reasoned explanation.

The examiner should opine as to whether it is at least as likely as not that Veteran has a left knee disorder that manifested in service or that is otherwise causally or etiologically related to his military service, to include any injury or symptomatology therein. 

In rendering this opinion, the examiner should note that VA treatment records document complaints regarding his right knee prior to January 2010.

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of a certain conclusion as it is to find against it.) 

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history [,]" 38 C.F.R. § 4.1, copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

4. After completing the foregoing development, the Veteran should be afforded a VA examination to determine the nature and etiology of any idiopathic cold agglutinin autoimmune hemolytic anemia that may be present. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions.

The examiner should note that the Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the appellant, the examiner should provide a fully reasoned explanation.

The examiner should state whether the Veteran's anemia is an undiagnosed illness, a diagnosable but medically unexplained chronic multisymptom illness of unknown etiology, a diagnosable chronic multisymptom illness with a partially explained etiology, or a disease with a clear and specific etiology and diagnosis.

If the examiner determines that the disorder is either a diagnosable chronic multi-symptom illness with a partially explained etiology or a disease with a clear and specific etiology and diagnosis, he or she should opine as to whether it is at least as likely as not that Veteran's anemia is causally or etiologically related to his military service, to include any environmental exposures therein. 

In rendering this opinion, the examiner should specifically consider the Veteran's service treatment records (including the September 1998 master workplace exposure data summary), his June 2017 hearing testimony, and any military personnel records obtained on remand. 

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of a certain conclusion as it is to find against it.) 

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history [,]" 38 C.F.R. § 4.1, copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

5. After completing the foregoing development, the Veteran should be afforded a VA examination to determine the nature and etiology of any hives or skin disorder that may be present. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions.

The examiner should note that the Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the appellant, the examiner should provide a fully reasoned explanation.

The examiner should opine as to whether it is at least as likely as not that Veteran has hives or skin disorder that manifested in service or that is otherwise causally or etiologically related to his military service, to include any symptomatology or exposures (such as cleaning solvents) therein. In rendering this opinion, the examiner should specifically consider the Veteran's service treatment records (including the September 1998 master workplace exposure data summary) and June 2017 hearing testimony.

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of a certain conclusion as it is to find against it.) 

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history [,]" 38 C.F.R. § 4.1, copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

6. After completing these actions, the AOJ should conduct any other development as may be indicated by a response received as a consequence of the actions taken in the preceding paragraphs.

7. When the development requested has been completed, the case should be reviewed by the AOJ on the basis of the additional evidence. If the benefits sought on appeal are not granted, the Veteran and his representative should be furnished a Supplemental Statement of the Case and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.


The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
J.W. ZISSIMOS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).